IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


DANELLE R. GEIER,

  Plaintiff,

vs.            CASE NO. 1:07cv20-MP/WCS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

  Defendant.

              /

## REPORT AND RECOMMENDATION

  This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. LOC. R. 72.2(D).  It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

  Plaintiff, Danelle R. Geier, applied for supplemental security income benefits. Plaintiff was 21 years old at the time of the administrative hearing, had a high school equivalent education, and had no past relevant work.  Plaintiff alleges disability due to borderline intellect.  The Administrative Law Judge found that Plaintiff retains the

residual functional capacity to do simple unskilled light work and was not disabled as defined by Social Security law. Plaintiff contends that the ALJ erred in not finding that her impairments equaled Listing 12.05C.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The Commissioner analyzes a claim in 5 steps. 20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

> 5.   Do the individual's impairments prevent other work?

At step 3, the Commissioner's rules provide that if the claimant has an impairment that is listed in or equal to an impairment listed in Appendix 1, Subpart P, following 20 C.F.R. § 1599, then a finding of disability will be without considering the claimant's age, education, and work experience.  20 C.F.R. § 1520(d).

> The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just "substantial gainful activity."

Sullivan v. Zebley, 493 U.S. 521, 532, 110 S.Ct. 885, 892, 107 L.Ed.2d 967 (1990) (emphasis by the Court).  The claimant has the burden of proving that his impairments meet or equal a listed impairment by presentation of specific evidence of medical signs, symptoms, or laboratory test results meeting all of the specified medical criteria.  493 U.S. at 530, 110 S.Ct. at 891.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  Id. (emphasis by the Court).

 **Legal Analysis**

Plaintiff's argument that Plaintiff meets Listing 12.05 is based upon an attempt to translate Plaintiff's broad reading score, in the 1st percentile, to an IQ score of less than 70.  Doc. 16, pp. 15-16.

Plaintiff was tested on October 2, 2001, when she was 17 years old.  R. 178.  Her broad reading score was in the 1st percentile.  R. 179.  Her broad mathematics score was in the 11th percentile, and her broad written language score was in the 3rd

percentile. *Id*. The testing psychologist, Peggy Vermont, determined that Plaintiff was functioning in the borderline range of intelligence. R. 179. She said that Plaintiff's broad reading skills were within the mentally deficient range, "but not significantly lower than her estimated intelligence." R. 180. She said that Plaintiff's broad writing skills were in the borderline range, and "comparable to her estimated intelligence." *Id*. It was noted during this testing that a much earlier "S.Binet" score, when Plaintiff was 6 years old, was 96. R. 178. The Stanford Binet test is an IQ test.

> Listing 12.05 provides:
>
> 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>>
>> OR
>>
>> B. A valid verbal, performance, or full scale IQ of 59 or less;
>>
>> OR
>>
>> C. *A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function*;
>>
>> OR
>>
>> D. *A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following*:

>    1. Marked restriction of activities of daily living; or
>
>    2. Marked difficulties in maintaining social functioning; or
>
>    3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
>    4. Repeated episodes of decompensation, each of extended duration.

(Emphasis added.)

Plaintiff has not presented evidence to show that the suggested extrapolation from the results of the Woodcock Johnson Broad Reading Score provides a "valid" IQ score. With the possible exception of the Stanford Binet test score of 96 when Plaintiff was six years old, there is no valid IQ score for Plaintiff in this record. Plaintiff has the burden of proof at step 3, and should either have submitted evidence to support the validity of the extrapolation, or obtained a valid IQ score by additional testing.

A fair reading of the assessment by Ms. Vermont is that she thought that Plaintiff has a "borderline" intelligence level. A borderline intelligence level generally means that the IQ exceeds 70. *E.g.*, Turner v. Crosby, 339 F.3d 1247, 1276 n. 21 (11th Cir. 2003) (IQ of 72 indicates borderline intelligence), *cert. denied*, 541 U.S. 1034 (2004); Smith v. Anderson, 104 F.Supp.2d 773 (S.D. Ohio Feb 22, 2000) (an IQ of about 70 indicates borderline intelligence, while an IQ below that indicates mental retardation), *aff'd*, 348 F.3d 177 (6th Cir. 2003); United States v. Murgas, 967 F.Supp. 695 (N.D. N.Y. 1997) (an IQ between 74 and 81 indicates borderline to low average intelligence); Sheriff v. Barnhart, 244 F.Supp.2d 412, 431 (W.D. Pa. 2002) (IQ scores of 73 and 75 indicate borderline intelligence); Campbell v. Barnhart, 2002 WL 32595046, *11 (E.D. Va. Aug

15, 2002) (scores greater than 70 indicate borderline intelligence), *aff'd*, 56 Fed. Appx. 167 (4th Cir. 2003); Grubb v. Apfel, 21 F.Supp.2d 1236, 1239 (D. Kan. 1998) (full scale IQ of 71 indicates borderline intelligence).

Furthermore, a valid IQ is not necessarily the final determinant of disability. Listing 12.00D.1.6.a provides:

> a. The results of standardized intelligence tests may provide data that help verify the presence of mental retardation or organic mental disorder, as well as the extent of any compromise in cognitive functioning.  *However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation*.

(Emphasis added.)  There is substantial evidence in the record that Plaintiff has significant functional capacity.  Plaintiff testified that she is married, can use a computer to email people, cleans the house, does the cooking, and takes care of animals.  R. 240, 254. 266.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge correctly followed the law and are based upon substantial evidence in the record.  The decision of the Commissioner should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 26, 2007.

                                              **s/    William C. Sherrill, Jr.**
                                              **WILLIAM C. SHERRILL, JR.**
                                              **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 1:07cv20-MP/WCS